UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDSEY TAYLOR, as Personal
Representative to the
ESTATE OF CRYSTALEIGH
ARTRIP,

    Plaintiff,

v.                            Case No:  2:24-cv-429-JES-NPM

CPLG FL PROPERTIES LLC,

    Defendant,

## OPINION AND ORDER

Plaintiff alleges that Crystaleigh Artrip ("Artrip" or "Decedent") was a victim of sex trafficking by two non-parties at a La Qunita Inn (the "Hotel") in Naples, Florida. Over eight years later, Plaintiff Lindsey Taylor ("Taylor"), acting on the now-deceased victim's behalf, sued the Hotel's owner and operator, Defendant CPLG FL Props. LLC ("CPLG"). Taylor asserts that CPLG is civilly liable under a provision of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), because CPLG benefitted from Artrip being sex trafficked.

Prior motions to dismiss by CPLG were denied as moot, (Docs. #27, 33), and Taylor's operative pleading is the Second Amended Complaint ("SAC"), (Doc. #32.) According to the SAC, during the first two weeks of December 2015, Artrip was a victim of sex trafficking. The alleged traffickers were two individuals who

1

have since been criminally charged by the State of Florida for human trafficking. They have entered no-contest pleas in Collier County Circuit Court and remain incarcerated. Artrip died in August 2022, and Taylor is suing in her capacity as the personal representative of Artrip's estate. At all relevant times, CPLG was the alleged owner and operator of the Hotel where the sex trafficking reportedly took place, and CPLG had two members, both of whom were located in Texas.

This matter now comes before the Court on Defendant's *Motion to Dismiss* (Doc. #36) the SAC. Plaintiff filed a *Response in Opposition*. (Doc. #37.) Defendant filed a *Reply in Support*. (Doc. #40.) For the reasons given below, the motion is **GRANTED** to the extent that the SAC is dismissed without prejudice and Plaintiff is given leave to file a third amended complaint.

I.

**A. Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a

2

right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

Defendant seeks to dismiss the SAC pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  (Doc. #36.)  In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.

**B. Trafficking Victims Protection Reauthorization Act**

Congress enacted the Trafficking Victims Protection Act ("TVPA") as part of the federal criminal code in 2000. When reauthorizing the Act in 2003, Congress added 18 U.S.C. § 1595(a), which provided for civil relief against "perpetrator[s]" of sex trafficking.[1] The 2008 reauthorization expanded the availability of civil relief by amending § 1595(a) to allow victims to also sue "beneficiaries" of sex trafficking.[2]

The statute provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Id. Thus, under § 1595(a) a plaintiff may bring a civil claim against both perpetrators and beneficiaries of sex trafficking. To bring a civil TVPRA claim against an alleged beneficiary, a plaintiff must plausibly allege that the defendant:

(1) knowingly benefited, (2) from taking part in a common

---

[1] See Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875, 2878 (enacted as 18 U.S.C. § 1595(a) ("An individual who is a victim of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator")).

[2] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044, 5067.

4

>   undertaking or enterprise involving risk and potential profit, (3) that . . . violated the TVPRA as to the plaintiff, and (4) [with] constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021); see also K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024).

### C. Plaintiff's Stated Cause of Action

The SAC (Doc. #32) pleads a beneficiary claim against CPLG, the owner and operator of the Hotel, for a violation of the TVPRA. Specifically, the SAC alleges that Artrip was a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and that CPLG was a "beneficiary" of that sex trafficking within the meaning of § 1595(a). According to the SAC:

The traffickers ran a sex-trafficking ring in Naples, Florida, from mid-October 2015 to January 2016. (Doc. #32 at ¶ 35.) During that time, numerous victims were trafficked in four rooms at the La Quinta Inn owned and operated by CPLG. (Id. at ¶¶ 34-36.) Artrip was trafficked there in December 2015, (Id. at ¶¶ 3, 6, 8, 9, 23, 29, 31), until she was discovered by police on December 15, 2015. (Id. at ¶¶ 53-54.)

The traffickers used force, fraud, or coercion to induce Artrip to engage in sex with buyers. (Id. at ¶¶ 6, 31.) Specifically, they took advantage of her heroin addiction, physically and verbally abused her, and instilled fear by

5

referencing other individuals they had murdered. (Id. at ¶¶ 6, 32.)

CPLG controlled the training, policies, protocols, rules, and guidelines at the Hotel. (Id. at ¶ 11.) Given the availability of training materials from the American Hotel Lodging Association, ECPAT-USA, and other resources, CPLG knew or should have known of the "critical role" that the hotel industry plays in "enabling" the sex trade, and of the "widespread national epidemic of hotel/motel sex trafficking." (Id. at ¶ 13.) Despite that, CPLG failed to adequately implement education, training, and policies to prevent sex trafficking at its Hotel. (Id. at ¶ 14.) Because of CPLG's failures, Artrip was repeatedly victimized and trafficked for sex on the premises. (Id. at ¶¶ 15-17.)

CPLG "knowingly benefited" from Artrip being sex trafficked because it "receiv[ed] payment for the rooms rented" to "individuals it knew or should have known were engaged in sex trafficking." (Id. at ¶¶ 39-43.) CPLG also "financial[ly] benefit[ted]" from payments received for the traffickers' use of hotel Wi-Fi, which "enabled the subject sex trafficking to occur," as the traffickers "advertised" Artrip on "Backpage.com." (Id. at ¶¶ 43-44.)

The traffickers had "direct interaction" with certain "hotel employee(s) and staff" whom they "pa[id], befriend[ed], and/or compensat[ed] . . . to act as lookout(s) [and] to inform [them] of

6

police activity or other similar type alerts." (Id. at ¶ 47.) The traffickers also had a "continuous business relationship" with the "hotel, its agents, employees[,] and staff" because CPLG "repeatedly rented rooms, and renewed room rentals, to individuals [it] knew or should have known were involved in sex trafficking on the premises." (Id. at ¶ 55.) CPLG had "prior commercial dealings" with the traffickers that it "wished to reinstate for profit" by repeatedly renting rooms used for the trafficking of victims. (Id. at ¶ 56.)

CPLG knew or should have known of the nature of the traffickers' venture due to many "red flags," including: constant foot traffic; victims walking around common areas while drug-impaired, sleep-deprived, malnourished, with poor hygiene, in sexually explicit clothing, with visible bruises, and with facial blemishes from drug-induced compulsive skin picking; suspicious individuals loitering outside hotel rooms; traffickers monitoring hallways and doors and walking the perimeter; housekeeping staff observing suspicious people and items, including weapons, cash, drugs, paraphernalia, condoms, and lubricants; victims soliciting for sex in common areas; loud noise and yelling from rooms rented by the traffickers; and the traffickers berating the victims in common areas within earshot of hotel staff. (Id. at ¶ 57.)

The sex trafficking at the Hotel ended on December 15, 2015. Corporal Brian Wiedel observed one of the two traffickers walking

around the Hotel parking lot. (Id. at ¶ 53.) Knowing the man to be a local drug dealer, Cpl. Wiedel contacted the manager on duty, (id.), who mentioned "suspicious activity and strange people coming and going from rooms 429, 313, and 109." (Id.) They proceeded to Room 429, where they found the traffickers, their driver, Artrip, and another adult victim. (Id. at ¶¶ 53-54.)

## II.

CPLG argues that the crux of the SAC is an alleged failure on CPLG's part to prevent Artrip's sex trafficking. (Doc. #36, pp. 1-2.) While the SAC does indeed mention that alleged failure (Doc. #32 at ¶¶ 14-17), § 1595(a) does not impose civil liability on a defendant for failing to prevent sex trafficking. The Court, accordingly, does not read the SAC as alleging a claim for failure to prevent the sex trafficking. Rather, the Court reads the SAC as attempting to set forth a single claim under the "beneficiary" prong of § 1595(a). CPLG's motion to dismiss recognizes that as the only cognizable TVPRA claim in the SAC. (Doc. #36 at p. 5.)

CPLG reads § 1595(a) as establishing four elements for a beneficiary claim. (Id. at 5-6.) CPLG argues that the SAC fails to plausibly allege participation in a sex trafficking venture (element two), (id. at 6-11), or that CPLG had constructive or actual knowledge that such a venture violated the TVPRA as to Artrip (element four), (id. at pp. 11-13.) The Court agrees with the first argument, but not the second.

8

### A. Participation in a Venture

The only relevant published opinion in the Eleventh Circuit is Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021). The plaintiffs there asserted TVPRA beneficiary claims against the franchisors of franchisee hotels where they were trafficked, alleging that the franchisors participated in "sex trafficking ventures" with sex traffickers and hotel employees. Id. at 720-21. More specifically, the plaintiffs alleged that the franchisors received revenue from renting rooms to the sex traffickers, oversaw operations and hotel policies, controlled the training of managers, "sent inspectors to the hotels who would have seen signs of sex trafficking," and were aware of customer reviews mentioning that sex trafficking was occurring at the hotels. Id. at 726–27.

The Eleventh Circuit found those allegations insufficient to satisfy the second TVPRA element of participation in a sex trafficking venture. To the contrary, it held that there were "no plausible allegations that the franchisors took part in the common undertaking of sex trafficking." Id. at 726–27. While the franchisors saw "signs of sex trafficking," the Eleventh Circuit stated that "observing something is not the same as participating in it." Id. The Court clarified further that a hotel franchisor does not participate in a "sex trafficking venture" by merely "financially benefit[ting] from renting hotel rooms to the [plaintiff's] sex traffickers" and seeing signs of sex

9

trafficking. See id. at 727.

The Eleventh Circuit also discussed in dicta the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." Id. at 726. In doing so, the Court cited with approval Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017), stating:

> In Ricchio, the plaintiff sued the owner and live-in operators of a hotel where she was held hostage and sexually abused. Id. at 556. The First Circuit held that the plaintiff had plausibly alleged that the operators' association with the plaintiff's sex trafficker was a "venture" because her abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." Id. at 555. Considering these dealings, the plaintiff also plausibly alleged that, by renting a room to the abuser, the operators were "associating with him in an effort to force [the plaintiff] to serve their business objective." Id. We agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker.

Red Roof, 21 F.4th at 725-26.

In a subsequent non-published decision, the Eleventh Circuit considered how the "participation in a venture" element applies in a case against hotel franchisees. In K.H. v. Riti, Inc., No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), the plaintiff sought to establish a hotel franchisee's participation in a venture through allegations that: "(1) [the defendant] knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) [the defendant] continued to engage in a hotel business

10

relationship with and collect room rental revenue from [the plaintiff's trafficker] for approximately four years." 2024 WL 505063, at *3.

Those allegations were found insufficient to show that the hotel "took part in a common sex trafficking undertaking or enterprise" with the plaintiff's trafficker. Id. The Riti court stated that, under Red Roof, "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture[,]" and reiterated that "observing signs of sex trafficking 'is not the same as participating in it.'" Id. (quoting Red Roof, 21 F.4th at 726). The Court noted that the allegations in Ricchio were "far stronger than just an operator renting rooms to a trafficker." Id. at *3.

Plaintiff alleges that CPLG is civilly liable because it (1) failed to implement anti-sex-trafficking policies and procedures, (Doc. #32, pp. 3-4 ¶¶ 14, 16, 17), (2) failed to intervene to prevent Artrip being trafficked, (id. at 3-4, ¶ 15, 10-12 ¶¶ 57-60, 63-64), (3) rented hotel rooms to the traffickers, (id. at 7-10, ¶¶ 39-42, 46, 49-51, 55-56), and (4) allowed the traffickers to use hotel Wi-Fi to advertise Artrip, (id. at 8, ¶¶ 43-44). The Court finds that the allegations in the SAC do not plausibly allege the second element of a beneficiary claim under the TVPRA.

Courts have rejected Section 1595(a) claims based on allegations of nonfeasance. G.G. v. Salesforce.com, Inc., 76 F.4th

11

544, 563–64 (7th Cir. 2023) ("we read Section 1595(a)'s standard of knowing benefit from participation in a venture that has violated Section 1591 to require more than . . . 'mere passive nonfeasance' or an 'arm's length, passive, and largely indifferent' relationship with the criminal"); Riti, 2024 WL 505063, at *3 ("observing something is not the same as participating in it." (quoting Red Roof, 21 F.4th at 727)).³ Therefore, Plaintiff's allegations that CPLG failed to implement anti-sex-trafficking policies and procedures or to intervene to prevent Artrip from being trafficked fall short of alleging that CPLG participated in a sex trafficking venture.

The SAC language mirrors some of the general allegations in Red Roof about hotel employees acting as lookouts and traffickers using the hotel Wi-Fi to advertise their trade. Such allegations, however, were found insufficient in Red Roof.

As the Court explained, the plaintiffs there did "nothing to show that the franchisors [themselves] *participated* in a common undertaking involving risk or profit *that violated the TVPRA—i.e.,* the alleged sex trafficking ventures." Id. at 727 (emphasis

---

³ T.S. v. Wyndham Hotels & Resorts, Inc., No. 23-CV-2530 (PJS/ECW), 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) (explaining that a nonfeasance-based "continuous business relationship" participation standard would mean that "everyone . . . including the utility company that furnishes electricity to the hotel, the contractor who plows the hotel's parking lot, and the vendor who services the hotel's vending machines" would be "a participant for purposes of § 1595").

added). The facts alleged in the SAC, which are largely lacking in specificity, show a similarly uninvolved owner and operator.[4] And one of the few specific factual allegations shows a hotel manager acting *against* the interests of the traffickers by providing information and assistance that led to law enforcement discovering the sex trafficking venture and rescuing Artrip.

The remaining paragraph of alleged malfeasance within the SAC does not mention CPLG. Instead, the allegation is against unnamed and unnumbered "employee(s) and staff":

> During the time [Artrip] was trafficked at the subject hotel in 2015, [the traffickers] had direct interaction with hotel employee(s) and staff by means of paying, befriending, and/or compensating employee(s) and staff member(s) to act as lookout(s)/informant(s) for [the traffickers] so as to inform [the traffickers] of police activity or other similar type alerts.

(Doc. #32, ¶ 47). There are no allegations that these unknown individuals acted within the scope of their employment with CPLG

---

[4] The plaintiffs in Red Roof alleged that franchisors "managed and were inextricably connected to the renting of rooms, financially benefitted from renting those rooms to traffickers, and trained the managers who served as police lookouts." Id. at *3 (citing Red Roof, 21 F.4th at 726-27). But that was "insufficient to allege a common sex trafficking undertaking or enterprise." Id. The plaintiff in Riti alleged that the owner and operator "knew or should have known that sex trafficking was occurring"—based on "online reviews, police reports, and visible indicators" and its control of "all employees, managers, housekeepers, and other staff"—yet it "continued to engage in a hotel business relationship with and collect room rental revenue from [the trafficker] for approximately four years." Id. at *1,*3. Once again, those allegations were insufficient to "plausibly allege[] . . . a common sex trafficking undertaking or enterprise." Id.

13

by serving as lookouts or informants, nor that CPLG authorized them to do so.

In sum, there are insufficient nonconclusory factual allegations in the SAC to plausibly set forth a beneficiary claim under § 1595(a) beneficiary claim against CPLG. While this portion of CPLG's Motion to Dismiss (Doc. # 36) will be **GRANTED,** Plaintiff's § 1595(a) beneficiary claim is dismissed **WITHOUT PREJUDICE.**[5]

### B.  Knew of Should Have Known

CPLG also argues that the SAC does not sufficiently allege that it knew or should have known about Artrip's sex trafficking. (Doc. #36 at 11-13.)  But a different standard applies.  Unless a specific statute or rule requires otherwise, knowledge may be alleged generally in a complaint.  FED. R. CIV. P. 9(b). The SAC makes such general allegations of knowledge (Doc. #32 at ¶¶ 40, 46, 57), and is therefore sufficient. C.S. v. Wyndham Hotels & Resorts, Inc., 538 F. Supp. 3d 1284, 1297 (M.D. Fla. 2021) (Steele, J.). ("knowledge, and other conditions of a person's mind may be alleged generally." (citing Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018)).

---

[5] The Court recognizes that Defendant seeks dismissal *with* prejudice, but the SAC is the first pleading in this case which has been reviewed by the Court.  Therefore, another opportunity to plausibly state a cause of action will be provided.

**III.**

Accordingly, it is now

**ORDERED:**

1. Defendant CPLG FL Props. LLC's *Motion to Dismiss* (Doc. #36) is **GRANTED** as set forth above.

2. Plaintiff Lindsey Taylor's beneficiary claim under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act is **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff may file a third amended complaint within **thirty (30) days** of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this 19th day of November 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record